**In re GRAND JURY SUBPOENA DATED OCTOBER 22, 2001.**

**John Doe, A, John Doe, B, John Doe, C, Movant–Appellants,**

v.

**United States of America, Respondent–Appellee.**

**Nos. 01–6250, 01–6251, 01–6252.**

United States Court of Appeals, Second Circuit.

Argued Jan. 31, 2002.

Decided Feb. 21, 2002.

Audrey Strauss, Fried, Frank, Harris, Shriver & Jacobson, New York, NY, Robert G. Morvillo, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York, NY, Henry Putzel, III, Law offices of Henry Putzel, III, New York, NY, for Movant Appellants.

Stanley J. Okula, Jr., Assistant United States Attorney (Peter G. Neiman, Gary Stein, Assistant United States Attorneys, of counsel) for James B. Comey, United States Attorney for the Southern District of New York, White Plains, NY, for Respondent–Appellee.

Before: LEVAL, CALABRESI, Circuit Judges, and STEIN, District Judge.[*]

LEVAL, Circuit Judge.

This is an appeal by an attorney, the attorney's former client, and her former law firm from an order of the United States District Court for the Southern District of New York denying their motion to quash a grand jury subpoena. The subpoena summoned the attorney to testify about statements made by her client to agents of the Internal Revenue Service during an interview, which the attorney attended. Representations made by the

---

[*] The Honorable Sidney H. Stein, of the District Court for the Southern District of New York, sitting by designation.

Government during oral argument suggest that the precise issue before us differs in a small but potentially significant way from the issue as presented to the district court.

The significant facts (employing imaginary names to preserve the secrecy of the grand jury proceedings, *see* Fed.R.Crim.P. 6(e)) are as follows. In 1997, two agents of the Internal Revenue Service, Special Agent George Nass and Revenue Agent Mark Richards, made an appointment to interview the general counsel ("General Counsel") of the XY Companies at the offices of the ABC law firm. X and Y were the principals of the XY Companies. At the time, the ABC firm represented General Counsel, as well as some (or all) of the XY companies and other related individuals. The record is unclear whether at that time ABC represented X and/or Y in addition to representing the XY Companies and General Counsel. ABC now represents X.

At the interview, General Counsel was accompanied by John Partner, a partner of the ABC firm, and by Cynthia Attorney ("Attorney"), an associate of the firm. At the interview, the IRS agents asked questions and General Counsel gave answers. During the four years since the interview, Revenue Agent Richards died, and Cynthia Attorney left ABC. She is currently employed elsewhere as an attorney.

The United States Attorney for the Southern District of New York is now conducting an investigation before a federal grand jury into dealings involving the XY companies. In pursuance of that investigation, the Government caused a subpoena to be issued to Attorney to compel her testimony before the grand jury. The Government informed Attorney that the questioning would be limited to a factual report of what her client General Counsel said in her presence to Agents Nass and Richards during the course of the 1997 interview.

General Counsel, joined by Attorney and the ABC firm, then filed a motion seeking to quash the subpoena on the grounds that the Government's effort to compel the testimony of Attorney on her recollection of her client's statements during the course of her representation of the client would violate the work product privilege, as outlined in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and Fed.R.Civ.P. 26(b)(3). The Government filed papers in opposition, arguing that work product is not implicated by an order compelling an attorney to testify about her client's statements made in her presence to government agents and that, even if it is, the privilege should yield because the Government has demonstrated "substantial need" for her testimony.

The fair implication of the papers submitted by the Government to the district court suggested that Attorney's testimony about her client's statement to Nass and Richards would be used solely to support a charge that, during the interview, General Counsel committed criminal offenses—to wit, making false statements to government officials. *See* 18 U.S.C. § 1001. The Government's letter-memo submitted to the district court asserts,

> The Government's investigation has shown that [General Counsel] made numerous false statements in the 1997 . . . interview, and the Government anticipates asking the Grand Jury to return false statement charges against [General Counsel] for those statements. . . . Without Attorney's testimony, such charges would be little more than a swearing contest between General Counsel and the sole surviving agent about what [General Counsel] did or did not say in the interview.

Elsewhere, the memorandum states that the investigation seeks to learn "among other things whether X and Y perpetrated a massive fraud on their creditors and evaded taxes...." It does not refer to General Counsel as a subject of the investigation into fraud and tax evasion. Nowhere in the memo (nor in the transcripts of colloquy before Judge Keenan that have been presented to us) is there mention of any criminal charge contemplated against General Counsel other than false statements. On the basis of this presentation, the district court would have reasonably believed it was ruling on whether the work product privilege could be used to bar an attorney's testimony, limited to her observation of her client's commission of the crime of making false statements. Judge Keenan denied the motion to quash the subpoena.

The Government's brief on appeal is somewhat different. Its general line of argument is similar, contending essentially that the work product doctrine should not be used to bar access to Attorney's testimony attesting to her client's commission of criminal acts in her presence.[1] However, unlike the brief presented to the district court, the Government's brief on appeal also suggests that General Counsel was a participant in the frauds allegedly perpetrated by X and Y that are the focus of the grand jury investigation.[2]

This prompted us to ask at oral argument whether the Government contemplated using Attorney's testimony only to support charges that General Counsel committed the criminal offense of false statements in Attorney's presence, as the papers to the district court seemed to suggest, or also to support charges that General Counsel committed fraud prior to the 1997 interview, in relation to which Attorney was representing him during that interview. The Government answered that it intended to use Attorney's testimony as to what General Counsel said to the IRS agents for *both* purposes.[3]

We believe that the difference between the two uses of Attorney's testimony against her client may have an important

1. Thus the Government's brief asserts,
   [General Counsel] made his statements to the IRS agents in [Attorney's] presence, and in so doing, in the Government's view, committed a crime. Attorney is a witness to that crime and her testimony would be directly admissible at any false statements trial of [General Counsel].... *See also In re Grand Jury Subpoena Dtd. January 4, 1984,* 750 F.2d [223,] 226 [(2d Cir.1984)]. ("Actual observation of criminal activity is not subject to a claim of privilege.").... If, instead of witnessing [General Counsel] lie to the IRS agents, [Attorney] had witnessed [General Counsel] threaten the IRS agents or offer them a bribe, or solicit the agents' interest in a fraudulent investment program, surely no one would argue that her recollection of those statements would be "work product."

2. In a footnote, the brief asserts,
   If established, [General Counsel's false statements to the IRS agents] would not only constitute a separate crime, but would provide compelling proof of [General Counsel's] consciousness of guilt with respect to the other matters under investigation.
   And in the recitation of facts, the Government's brief asserts that General Counsel was "fully involved in the fraud," and that his false statements "to the IRS during the April 1997 interview [were] designed to conceal [his] knowing participation in [X and Y's] criminal [frauds]."

3. We do not intimate or suggest that the Government deliberately misled either our court or the district court. The Government did no more than present its strongest arguments, perhaps without recognition that different results might follow depending on the scope of the use made of Attorney's testimony. Nevertheless, the Government's discussion may have unintentionally misled the district court as to the use that would be made of the compelled testimony.

bearing on the resolution of the claim of work product privilege. If the use of Attorney's testimony were limited to proving that General Counsel committed the crime of false statements in Attorney's presence, the Government would have strong arguments that the work product privilege should not bar a prosecutor's access to eyewitness testimony of the commission of criminal acts.

On the other hand, the Government's argument seems much less persuasive when the work product privilege is invoked to bar an order compelling the attorney's testimony to admissions made by her client in her presence when that testimony will be used to prove the client's commission of the very crimes concerning which the attorney was representing him at the time.

The work product doctrine is suffused with policy considerations relating to the appropriate role of the attorney and the relationship between client and attorney. *See Hickman,* 329 U.S. at 510–12, 67 S.Ct. 385; *United States v. Nobles,* 422 U.S. 225, 236–40, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *Upjohn Co. v. United States,* 449 U.S. 383, 398, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). It is one thing for a client to recognize that if he commits a crime in his attorney's presence, the attorney may be compelled to testify to the criminal acts she witnessed. It seems to us quite different for the client to accept that if he hires an attorney to represent him with respect to his past commission of a crime, the attorney may be compelled to testify against him as to admissions (or denials) he made in his attorney's presence that tend to prove his guilt with respect to that past crime.

■ We see no reason why the work product privilege is not properly invoked to bar the compulsion of that testimony. It falls comfortably within the black letter definition of work product. Furthermore, it implicates policy concerns relating to the lawyer-client relationship. The work product privilege establishes a zone of privacy for an attorney's preparation to represent a client in anticipation of litigation. *See Hickman,* 329 U.S. at 510–11, 67 S.Ct. 385; *United States v. Adlman,* 134 F.3d 1194, 1196 (2d Cir.1998). For the attorney to be subpoenaed to testify to the observations made in the course of that preparation in order to help the putative adversary prove the offense as to which the attorney was providing representation would do substantial injury to the values that justify the work product doctrine.

■ We therefore reverse the district court's order. We uphold the claim of work product privilege to bar the subpoena compelling Attorney to testify to her client's admissions as evidence of his commission of the offenses of fraud and tax evasion, on which Attorney was representing him during the interview.

Our order, however, does not address what would occur if the Government issues a new subpoena summoning Attorney before a different grand jury—one that is not investigating General Counsel's alleged commission of frauds in connection with X, Y and the XY companies—to determine whether at the interview General Counsel committed new offenses consisting of false statements in violation of 18 U.S.C. § 1001. If the Government serves such a subpoena, and motions are then made by Attorney, the ABC firm, General Counsel, or other persons with standing, to quash the subpoena on the basis of work product, a new question will arise. That question is not now before us. Although in this discussion we have made passing observations about it, we here make no ruling on it. If the question arises, the district court should consider it *de novo.*

We add a few brief observations, however, which may be relevant if and when such a subpoena is issued and the district court considers such a motion. First, the district court at one point intimated a view that the work product privilege may have no application to facts, as opposed to opinions and strategies. We believe this to be an overstatement. While it may well be that work product is more deeply concerned with the revelation of an attorney's opinions and strategies, and that the burden of showing substantial need to overcome the privilege may be greater as to opinions and strategies than as to facts, *see* Fed.R.Civ.P. 26(b)(3), we see no reason why work product cannot encompass facts as well. It is helpful to remember that the work product privilege applies to preparation not only by lawyers but also by other types of party representatives including, for example, investigators seeking factual information. *See* Fed. R.Civ.P. 26(b)(3). If an attorney for a suspect, or an investigator hired for the suspect, undertakes a factual investigation, examining *inter alia*, the scene of the crime and instruments used in the commission of the crime, we see no reason why a work product objection would not properly lie if the Government called the attorney or investigator before the grand jury and asked "What facts have you discovered in your investigation?" We think the district court advanced an exaggerated view in suggesting that work product has no application to facts. Broad categorical statements about the scope of the work product privilege are risky, as individual applications are highly fact specific. In our view, analysis should proceed cautiously, case by case.

Second, we believe the Government's arguments about its demonstration of "substantial need" are not squarely on point. As noted above, the Government argued that it would have substantial need for Attorney's testimony in a trial of General Counsel on false statement charges. Without Attorney's testimony, the Government argues, the trial would come down to a swearing contest between the defendant General Counsel and the sole surviving IRS agent as to what General Counsel did or did not say in the interview. "[Attorney's] testimony has the potential to corroborate substantially the agent's testimony."

This argument, whatever its merit, relates to the Government's need for *trial* testimony, not to its need for grand jury testimony. The subpoena in question does not call for Attorney's testimony at trial. The subpoena seeks Attorney's testimony before the grand jury. The grand jury does not make a determination of guilt or innocence. It merely determines whether the Government has shown probable cause. Before the grand jury, the Government does not need to prevail in a swearing match. It can easily establish probable cause as to General Counsel's alleged false statements through the testimony of Agent Nass, regardless whether Nass's testimony is corroborated. Thus, the Government's arguments as to its substantial need for Attorney's testimony to resolve a swearing contest at trial are not directly pertinent to its need to compel Attorney's testimony before the grand jury.

Perhaps what the Government means is that, having a substantial need to call Attorney at trial to break the swearing match between the IRS agent and the defendant, it therefore has a substantial need to preview what Attorney's testimony will be by calling her first into the grand jury. We express no view on that question. We simply point out that the Government's argument of substantial need as presented to us relates to its need for Attorney's testimony at trial, while the

subpoena in question calls for her testimony before the grand jury.

### CONCLUSION

We reverse the district court's order denying the motion to quash and direct that the motion be granted.